Eugene Ashe Electric Company v. Commissioner.
Eugene Ashe Elec. Co. v. Commissioner
Docket No. 2649.
United States Tax Court
1944 Tax Ct. Memo LEXIS 138; 3 T.C.M. (CCH) 852; T.C.M. (RIA) 44276; August 11, 1944
*138 Herbert C. Wade, Esq., for the petitioner. Frank B. Appleman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: This proceeding involves deficiencies in income, excess profits, and declard value excess profits taxes, together with negligence and fraud penalties, as follows: Declared Value
5%
50%
Year
Income
Excess Profits
Excess Profits
Penalty
Penalty
1938
$1,396.05
$ 533.88
$96.49
1939
44.72
$ 22.36
1940
5,929.01
2,674.00
$2,685.16
5,644.09
The petitioner alleges the following errors: (a) The Commissioner erred in holding that $7,615.30, salary of Eugene Ashe, and $2,253.35, salary of A. W. Pierce, for 1938, represent taxable income realized through the cancellation of the company's indebtedness to them of said sums, respectively. (b) The Commissioner erred in holding that indebtedness of E. G. Withers to the company in the amount of $1,133.00 became worthless in a year prior to 1938, and, therefore, was not deductible from gross income in 1938. (c) The Commissioner erred in determining a 5% negligence penalty on the deficiency determined for the year 1938. (d) The Commissioner erred in *139 holding that indebtedness of Charles E. Curtis to the company, in the amount of $732.75, had been determined to be worthless in the year 1935, and, therefore, was not deductible from gross income in 1939. (e) The Commissioner erred in determining a 50% penalty on the deficiency determined for the year 1939. (f) The Commissioner erred in holding that $12,400.00 of the salary claimed as a deduction as having been paid to Eugene Ashe, was not a legal deduction from the gross income of the company for the year 1940. (g) The Commissioner erred in holding that $5,000.00 of the salary of A. W. Pierce, for the year 1940, is unreasonable and represents a distribution of corporation earnings, and, therefore, should not have been deducted from the gross income of the company for the year 1940. (h) The Commissioner erred in holding that the Don Hall debt, in the amount of $13,313.80, had been determined to be worthless in the year 1935, and, therefore, was not deductible from gross income of the company for the year 1940. (i) The Commissioner erred in determining a 50% penalty on the deficiency determined for the year 1940. Respondent now concedes the correctness of the first allegation *140 of error, agreeing that petitioner realized no taxable income through the cancellation of liabilities due its officers on account of accrued salaries. Findings of Fact Petitioner, Eugene Ashe Electric Company, is a corporation organized under the laws of Texas, in 1913, with its principal office located at Fort Worth, Texas. It is and during the taxable years here involved was engaged in the electrical contracting business. Its returns were filed with the Collector of Internal Revenue for the second district of Texas. It kept its books and filed its returns on an accrual basis of accounting. The capital stock of petitioner consisted of 250 shares, par value $100 per share. During the years in question 190 shares were owned by Eugene Ashe, president of petitioner, and 50 shares were owned by A. W. Pierce, vice president and secretary-treasurer of petitioner. The remaining 10 shares were owned by W. S. Card, also a vice president of petitioner. 1938 On October 19, 1928, petitioner loaned to E. C. Withers, a long-standing friend of Eugene Ashe, the sum of $500 for which it received a note bearing eight per cent interest. Withers was an architect, located in Fort Worth, for *141 whom petitioner sometimes did work as a subcontractor. Petitioner had made a previous loan of $2,000 to Withers sometime prior to 1925, in connection with the latter's business, which loan was paid in 1925 or 1926. No payments were ever made on the $500 note. As of December 31, 1931, accrued interest amounted to $223.75. On October 1, 1933, another note in the amount of $250 was given petitioner by Withers, bearing interest at the rate of eight per cent per annum. After 1933 no interest on either of these notes was accrued on petitioner's books. nor was any interest reported by petitioner in its tax returns for the years 1935, 1936, or 1937. No effort was ever made to collect the amount of this indebtedness from Withers. Ashe talked to Withers about the matter of payment once or perhaps twice over the course of the years and Withers said he was not then able to repay the loans. Ashe made no check on Withers' assets and liabilities, but simply took Withers' word that he was not able to pay. In 1938 Withers died. Petitioner filed no claim with his widow and made no check on the assets of the estate, but Ashe simply determined in his own mind that the notes were then uncollectible. *142 In 1938 the debt was charged off the books of the petitioner and the amount thereof deducted as a worthless debt on the petitioner's tax return for 1938. The sole reason for charging off the debt in 1938 was that Withers died in that year. The respondent disallowed the deduction on the grounds that the debt became worthless in a year prior to 1938. He further determined a five per cent penalty for negligence. The Withers note was not ascertained by petitioner to be worthless in 1938. The petitioner was not guilty of negligence in connection with the filing of its 1938 return. Opinion The deductibility of bad debts in 1938 is controlled by section 23 (k) (1) of the Revenue Act of 1938. [1]
*143 The facts go no further than to show that Withers died in 1938 and that petitioner charged the amount off without investigating the status of Withers' estate and without filing a claim for the amount. The sole reason. Ashe, admitted, for charging off the item in 1938 was the death of Withers. We think it clear that these facts fail to establish that petitioner ascertained the debt to be worthless in the year 1938. Whether resort be had to the so-called subjective test, Harris v. Commissioner, 140 Fed. (2d) 809; Rosenthal v. Helvering, 124 Fed. (2d) 474; or to the objective test., Avery v. Commissioner, 22 Fed. (2d) 6; Reading Company v. Commissioner, 132 Fed. (2d) 306, it is apparent that the taxpayer has the burden of proving that the debt was actually uncollectible during the year in which he claims the deduction. San Joaquin Brick Co. v. Commissioner, 130 Fed. (2d) 220. The rule has been stated in Quinn v. Commissioner, 111 Fed. (2d) 372 (CCA-5, 1940) as follows: We think the taxpayer failed *144 to prove by substantial evidence that he had ascertained the debt to be worthless within the meaning of the statute. The word ascertain means to make certain; to find out or learn for a certainty; to free from obscurity or doubt. Hence, to justify a deduction, the taxpayer must have made a reasonable investigation of the facts and have drawn a reasonable inference that the debt was in fact worthless from the information thus obtained. The only evidence contained in the record upon this point is the showing that the taxpayer, upon learning that his debtor had disposed of his stock in the Sal-Mar Corporation, "considered the debt worthless and charged it off on his 1936 income tax return." There is no evidence to show the financial condition of the debtor in 1936, nor is there evidence of any investigation of his financial condition by the taxpayer. There is not even a showing that the bonds, the loan of which created the obligation, were not subject to levy at the time the deduction was claimed. While we do not doubt that the taxpayer acted in good faith in claiming the deduction, honesty of belief is not sufficient where the record is devoid of proof that he made a reasonable conclusion *145 after adequate investigation. Sherman & Bryan v. Blair, 2 Cir., 35 Fed. (2d) 713 [1929 CCH D-9312]. This record is void of such proof and, therefore, the determination of the Commissioner in respect of this item must be sustained. The negligence penalty determined for the year 1938 appears to have been based on the petitioner's failure to report, as taxable income, the cancellation of liabilities due its officers for accrued salaries and by reason of the improper charge-off of the Withers note. As we have already stated the respondent now confessed error on the first point. We do not think the facts surrounding this charge-off of the Withers debt standing alone warrant the imposition of the negligence penalty. Findings of fact 1939 In 1930 petitioner loaned a sum of money to Charles E. Curtis, receiving as evidence thereof a promissory note. Curtis was a former employee of petitioner who left petitioner's employ to study engineering after which he entered the electrical contracting business for himself. Petitioner sued on this note and obtained a judgment in 1933. In a proceeding before the Board of Tax Appeals involving this petitioner's tax *146 liability for the year 1930, Ashe testified that the Curtis note became worthless in 1930. On February 15, 1935, petitioner seeking to compromise the tax liability determined for the year 1930, filed an offer of compromise with the Collector of Internal Revenue in which offer it sought to establish that it did not have sufficient assets to pay the tax as determined. In this connection it was stated that there was no hope of collecting the Curtis note. On August 21, 1935, in a second offer of compromise relating to the tax liability for the same year, petitioner listed the Curtis note among worthless notes receivable with the explanation "no assets - unable to pay." On February 29, 1936, in a third offer of compromise the note was described in the same language. No deduction was taken with respect to this item on petitioner's tax returns prior to 1939. In 1935 and 1936 Curtis' business improved when he secured several construction contracts. He handled the work improperly, however, and failed sometime after 1937. No interest on the note was ever reported by petitioner after 1934, because it was thought useless to build up a large interest account when the principal was uncollectible. *147 In 1939 petitioner charged off its books the Curtis indebtedness in the sum of $732.75 and in its tax return deducted the amount as a worthless debt. The respondent disallowed the deduction of the amount of this indebtedness on the ground that it was determined by petitioner to be worthless in the year 1935. The Curtis indebtedness became worthless prior to the year 1939. The return for the year 1939 was not false and fraudulent with intent to avoid tax. Opinion The controlling statute in regard to this issue is section 23 (k) (1) of the Internal Revenue Code as amended by section 124 of the Revenue Act of 1942 [2] (effective with respect to taxable years after December 31, 1938). By virtue of that amendment only debts becoming worthless within the taxable year are deductible and the burden is, of course, upon petitioner to prove that the debt actually became worthless in the year in question. Cittadini v. Commissioner, 139 Fed. (2d) 29. *148 The evidence relative to this item is vague and unsatisfactory. The indebtedness originated in 1930. No payments were ever made on principal or interest. Petitioner sued in 1933 and obtained judgment against Curtis. In 1933 petitioner testified before the Board of Tax Appeals in a proceeding involving the year 1930, that the debt had become worthless in 1930. In 1935 and 1936 petitioner, attempting to prove that it had insufficient assets to pay a deficiency in tax for 1930, stated in offers of compromise that the note was worthless and that Curtis had no assets and was unable to pay. No interest was accrued or reported on account of this note, because it was thought useless to build up a large interest account on an uncollectible principal. Curtis secured some construction contracts in 1935 or 1936 and Ashe testified that petitioner believed there was some possibility of collecting the debt then. Curtis, however, failed sometime after 1937, whether in 1938 or 1939 the witness Ashe could not be sure. This evidence is clearly inadequate to establish that the debt actually became worthless in 1939. If, as the petitioner contends, there was some hope of collecting the indebtedness *149 when there was an up-turn in Curtis' business in 1935 or 1936, the testimony goes no further than to state that he failed sometime after 1937. This leaves open the question of whether it was 1938 or 1939. Accepting the petitioner's theory as correct, it was still incumbent upon it to prove that the worthlessness occurred in 1939. Findings of Fact 1940 Prior to 1928 Don Hall, a general contractor in Houston, Texas, was indebted to petitioner on open account in the amount of $40,000, arising out of work done by petitioner as subcontractor for Hall in the construction of the Medical Arts Building in Houston. On January 31, 1928, Hall executed three notes, two in the amount of $15,000 each, and one in the amount of $10,000 as evidence of this indebtedness. Over the next two years Hall made periodical repayments in varying amounts. On July 15, 1930, he executed, in renewal of the original notes, less the amount repaid, one note in the amount of $19,621.92, due August 15, 1930, and a second note in the amount of $10,000, due September 15, 1930, both bearing interest at seven per cent. No payments have been made by Hall since that time. Accrued interest to January 1, 1932, was *150 evidenced by a note in the amount of $3,313.80. On December 31, 1931, the directors of petitioner adopted a resolution authorizing the transfer of the Don Hall notes to the officers in partial satisfaction of accounts payable to the officers on account of salaries for past years. The notes at that time were considered to be worthless. In the aforementioned proceeding before the Board of Tax Appeals involving petitioner's tax liability for the year 1930, petitioner sought a deduction in the amount of the Don Hall notes which were claimed to have become worthless in 1930. The Board in a Memorandum Opinion, dated October 15, 1934, held that the debts were not charged off in 1930 and further that the corporation had suffered no loss inasmuch as the notes were transferred to the officers in 1931 at face value. The deduction was accordingly disallowed. Before entry of decision, and on October 23, 1933, the officers transferred the notes back to the corporation and their accounts were credited with the face value thereof, restoring the parties to the status existing before the original transfer from the corporation. No interest on account of the Hall notes was accrued on the books of the *151 corporation after January 1, 1932, because petitioner considered the notes worthless. In the above-mentioned offer of compromise, filed by petitioner with the Collector of Internal Revenue on February 15, 1935, the Don Hall notes in the amount of $32,935 were classified as "uncollectible." In the offers of compromise filed on August 21, 1935 and on February 29, 1936, the Don Hall notes were classified as worthless and described as "out-lawed - unable to pay." When these offers were filed petitioner considered the notes to be worthless. In 1940 Hall was negotiating for a contract for the construction of a $1,000,000 project. Ashe, chancing to be in Houston, talked with Hall and then returned to Fort Worth and addressed a letter to Hall requesting payment of the interest due on the above-described notes and a substantial payment on the principal. On November 15, 1940, Hall replied as follows: "In answer to your recent letter concerning my two notes I have the following proposition to make you. One of these notes is for $24,331.18 plus interest and the other is for $12,400 plus interest. If you will cancel the smaller note plus the interest on both notes I will give you a renewal *152 note covering the large one. In future I will make a strong endeavor to keep up with the interest on this note." Ashe answered for petitioner on November 22, 1940, agreeing to cancel the smaller note and interest in return for the execution of a new note in the amount of $19,621.92, with the understanding that Hall should make payments as able. On November 23, 1940, Hall returned an executed note for $19,621.92, due December 31, 1941, without interest. Receipt was acknowledged on November 25, 1940, by a letter signed by C. H. Knittel, bookkeeper for petitioner and the canceled notes were forwarded to Hall. On January 15, 1941, C. H. Knittel wrote the following letter to Hall. "Dear Mr. Hall: "On September 9th, 1940, we wrote you in connection with your notes, giving you the dates and amounts, and requested that you send us the interest due and a payment on the principal. "Will you please let us hear from you in reference to these notes." Hall answered as follows: "Dear Sir: "We have your letter of September 9, 1940 also your letter of January 15, 1941 in connection with my notes. It is altogether impossible for me to pay any interest or principal on these notes. Mr. Ashe is *153 fully aware of this situation." Sometime in 1941 Hall's negotiation for the $1,000,000 project collapsed and he failed to get the contract. On December 31, 1940, the amounts of the two smaller notes, $10,000 and $3,313.80, were charged off the books of the petitioner and in the tax return for the year 1940 petitioner claimed bad debt deductions in those amounts. These deductions were disallowed by the respondent on the grounds that the debts were determined to be worthless by petitioner in 1935. The amount of the Don Hall indebtedness charged off by petitioner in 1940 became worthless prior to that year. The return filed for the year 1940 was not false and fraudulent with intent to avoid tax. Opinion The facts relating to this item bear a striking similarity to the Curtis situation. Notes once considered worthless by petitioner are alleged to have regained value by reason of an up-turn in the financial condition of the debtor. The only evidence of this, such as it is, is that Hall was negotiating for the contract for the construction of a $1,000,000 project. He never obtained the contract. While negotiations were still pending he executed a new note for a part of the total indebtedness *154 and the balance which the petitioner now seeks as a deduction was canceled and charged off the books. On these facts, we can only conclude that the deduction was improper for the year 1940. Long prior to that year the notes were regarded by the petitioner as worthless. In so far as this record shows, nothing occurred to restore value to them. The activities of Hall, consisting simply of negotiating for a contract, do not, in our opinion, serve to prove that the notes became of value prior to their cancellation. Evidence of Hall's ability to pay at any time after the notes were admittedly considered worthless is completely absent. In view of these facts, the determination of the Commissioner must be sustained in so far as this item is concerned. Findings of Fact 1940 On March 20, 1940, the directors of petitioner, consisting of Ashe, Pierce, and Card, voted salaries for the year 1940 to Ashe in the amount of $15,000 and to Pierce in the amount of $10,000. Ashe was paid during the year the sum of $2,600 and as of the close of the year unpaid salary in the amount of $12,400 was entered as a credit to his personal account. No payments of this balance were made during the 2 1/2 *155 month period following the close of 1940. Petitioner, filing its returns on an accrual basis, deducted the full amount of $15,000. Ashe filed his return on the cash basis and reported salary received from petitioner in the amount of $2,600. In the fall of 1941 a revenue agent examined petitioner's tax return for the year 1940 and discovered that $12,400 of the $15,000 deducted as salary paid Ashe was not, in fact, paid him during that year. This fact was called to Ashe's attention, whereupon after having discussed the matter with his accountant, he filed an amended return on December 27, 1941, reporting the additional amount of $12,400 as income received in 1940. The balance sheet of petitioner as of January 1, 1941, is as follows: Eugene Ashe Electric Co.,
BALANCE SHEET AND FINANCIAL STATEMENT
JANUARY 1st, 1941
Cash in Bank Ft. Worth
$ 3,067.29
Cash in Bank Houston
1,200.00
$ 4,267.29
Miscellaneous Deposits
272.73
Accounts Receivable
84,902.60
Notes Receivable
20,486.76
Furniture & Fixture
853.57
Delivery Cars
5,026.87
Tools & Machinery
2,854.36
8,734.80
Stocks & Bonds
10,500.00
Street Lighting Certificates
4,198.54
Merchandise In Stock Ft. Worth
12,145.09
Merchandise In Stock Houston
1,104.70
13,249.79
Total Assets
$146,612.51
Accounts Payable
$ 47,824.17
Notes Payable
25,000.00
Social Security Taxes
438.34
Eugene Ashe Personal
$12,568.40
A. W. Pierce Personal
7,730.72
W. B. Schnorbus Personal
2,396.00
22,695.12
Capital Stock
25,000.00
Surplus
25,654.88
Total Liabilities
$146,612.51
*156 Included in the item Stocks and Bonds are Sterrick Hotel Bonds in the amount of $10,000, considered by petitioner to be worthless in 1935. A statement of petitioner's account in The First National Bank of Fort Worth, Texas, shows a balance of $11,489.70 on February 21, 1941, and a balance of $5,255.70 on March 15, 1941. During the years 1940 and 1941, petitioner had a line of credit with the bank to the amount of $100,000 of which $25,000 had been drawn prior to January 1, 1941, and this remained unchanged during the following 2 1/2 months. Opinion The question thus presented is whether or not section 24 (c) of the Internal Revenue Code[3] operates to prohibit the deduction of the amount of $12,400 as salary accrued but unpaid within the taxable year or within 2 1/2 months thereafter. Section 24 (c) prohibits the deduction of any expense not paid within that period where the corporation and the creditor are persons between whom losses would be disallowed under section 24 (b), and where by reason of the method of accounting of the creditor, the amount of the payment is not, unless paid, includible in his gross income for the taxable year in which or with which the taxable year *157 of the corporation ends. All three of these conditions must co-exist and the absence of anyone of them is sufficient to remove the case from the purview of section 24 (c). Fincher Motors, Inc., 43 B.T.A. 673. The petitioner relies on the doctrine of constructive *158 receipt to show that subdivision two is not applicable in this case and so to overcome the determination of the Commissioner. In Michael Flynn Mfg. Co., 3 T.C. 932, we held that constructive receipt was sufficient to remove a case from the provisions of section 24 (c) (2). As has been said many times, however, constructive receipt is an artificial concept to be applied sparingly and only in the clearest circumstances. The test is "whether the debtor has funds standing to the credit of the (creditor) which the debtor is able to pay and which are available and unqualifiedly subject to a (creditor's) demand." Samuel Keller Jacobs, 22 B.T.A. 1116. It is essential that the funds be available; the doctrine of constructive receipt properly envisions a situation where the creditor chooses not to receive an amount unqualifiedly available to him. John A. Brander, 3 B.T.A. 231; Samuel Keller Jacobs, supra.Issue is joined in this case upon the question of whether or not the salary accrued in favor of Ashe was unqualifiedly available to him the respondent pointing to *159 the cash position of the corporation to show that sufficient funds were not on hand to pay the amount. At the close of 1940 petitioner had cash in banks amounting to $4,267.29. The unpaid salary due Ashe amounted to $12,400. The balance sheet of petitioner shows that the corporation was in none too sound a position financially. The surplus of $25,654.88 is open to suspicion in view of the fact that $10,000 in bonds carried on the books as an asset was admitted to be worthless in 1935, and in view of the further fact that it affirmatively appears to have been the practice of the corporation to carry on its books worthless accounts and notes at face value. Viewing the financial picture of petitioner as a whole, we cannot say that the amount due Ashe was so readily available to him that he may be said to have constructively received it. The mere fact that the corporation "might borrow sufficient money or sell some of its assets and realize sufficient cash to pay the taxpayer the amount due does not make the taxpayer in receipt of income on the cash basis." Northern Trust Co., et al., Executors, 8 B.T.A. 685. We are convinced that Ashe had no thought of *160 drawing the $12,400 in 1940, and petitioner had no idea of paying this sum to him in that year. Findings of Fact Pierce's Salary - 1940 A. W. Pierce was not a graduate engineer, but had been in the electrical business all his life. He has been employed by petitioner since 1911. His duties consisted of estimating engineering work upon which petitioner would bid. If petitioner was successful in obtaining the contract Pierce would have charge of the engineering work. The Ashe Electric Company for the most part undertook only the larger engineering jobs such as municipal power plants, oil filed distribution systems, and large hotel and office buildings. Petitioner operated in Texas, Oklahoma, Louisiana, Arizona, Arkansas, Tennessee, and New Mexico. Pierce's job was one of responsibility and an important position in the conduct of petitioner's business. In 1940 Pierce generally worked seven days a week and 17 or 18 hours a day. The nature of his duties remained the same as in prior years, but his work had doubled in 1940. The following table shows Pierce's salary from 1935 through 1940. Year
Amount
1935
$ 2,340
1936
5,000
1937
5,000
1938
5,000
1939
5,000
1940
10,000
*161 During the years of the depression construction business was at a low ebb, and salaries in the electrical business were smaller than ordinarily. In 1930 Pierce's salary was fixed at $18,000 by the Board of Directors of petitioner, but the Commissioner determined a reasonable salary allowance of $9,000, which determination was approved by the Board of Tax Appeals in the aforementioned proceeding. In 1930 the gross receipts of petitioner amounted to $286,582, and in 1940, $296,344.86. Petitioner had paid no dividends from 1928. The Commissioner disallowed the deduction of $5,000 of the total salary allocated to Pierce on the grounds that it was unreasonable and actually represented a distribution of corporate earnings. Pierce's salary of $10,000 for the year 1940 was not unreasonable. Opinion On the facts set forth herein, we are of opinion that a salary of $10,000 a year to Pierce was not unreasonable. Penalty 1939-1940 The only remaining issues involve the 50 per cent fraud penalties determined against petitioner for the years 1939 and 1940. The penalty for the year 1939 is obviously predicated upon the deduction of the Curtis indebtedness as worthless in that year. Inasmuch *162 as several items were disallowed for the year 1940, it is impossible to ascertain from the deficiency notice the basis of respondent's determination of fraud for that year. We do not believe, however, that fraud may be predicated upon the deduction of any of the items here in question. We have held above that certain deductions were improper, but fraud rests not merely upon a mistaken return of income and deductions, but upon a specific intent to avoid taxes believed to be due and owing. The burden is upon the respondent to prove the existence of such intent by clear and convincing evidence. M. Rea Gano, 19 B.T.A. 518. Viewing the record as a whole, we are not convinced that there existed an intent to defraud the government. The determination of the Commissioner must be held to have been erroneous as regards fraud penalties for both of these years. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * * * *
(k) Bad Debts. - (1) GENERAL RULE. - Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection.↩
2. SEC. 124. DEDUCTION FOR BAD DEBTS, ETC. * * * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part which becomes worthless within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.↩
3. SEC. 24. ITEMS NOT DEDUCTIBLE. * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)↩.